# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Norfolk Division

| | |
|---|---|
| PAUL E. VICKERY, <br><br> Plaintiff, <br><br> v. <br><br> COLONIAL CHEVROLET COMPANY, LP d/b/a RICK HENDRICK CHEVROLET-NORFOLK, <br><br> Defendant. | Case No. 2:25-cv-107 |

## OPINION & ORDER

Before the Court is the parties' joint motion for final approval of settlement. ECF Nos. 28 (motion), 29 (memorandum). For the reasons stated herein, the motion will be **GRANTED**.

## I.  BACKGROUND[1]

This is an individual action for lost wages and compensatory damages under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, and unpaid wages under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201, *et seq*. The plaintiff is a former employee of Defendant Colonial Chevrolet Company, LP ("Colonial"). ECF No. 17 ¶ 8. Colonial is a Virginia limited partnership with its headquarters and principal place of business in Norfolk, Virginia. *Id.* ¶ 2.

---

[1] The facts outlined here are taken from the Amended Complaint (ECF No. 17). However, the Court's recitation of the allegations should not be construed as admissions by Defendant Colonial Chevrolet.

In March 1995, the plaintiff began working as a parts counterperson (PC) in Colonial's wholesale parts department at the dealership's Norfolk location. ECF No. 17 ¶ 8. The plaintiff earned a fixed base annual salary of $20,800 plus a 4.95% commission on the total gross profit from retail and wholesale parts sales. *Id.* ¶ 12. The plaintiff routinely worked between 50 and 60 hours per week and had his hours electronically tracked and approved by management. *Id.* ¶¶ 14–15. Beginning in 2021, Colonial failed to pay the plaintiff overtime wages for hours worked in excess of 40 per week and made unauthorized and undisclosed deductions from his wages. *Id.* ¶¶ 12, 16–17.

In a meeting of the PC department in February 2024, Colonial's fixed operations director "verbally berated" the plaintiff's work product and attitude. ECF No. 17 ¶¶ 24–27. In an effort to diffuse the situation, the plaintiff began stating, "I will step aside . . .," intending to finish with "and move to another department or dealership, whatever it takes to address this situation"—but before he could complete his sentence, the operations director jumped up from his seat and told the plaintiff, "I accept your resignation." *Id.* ¶ 27. The operations director refused to listen as the plaintiff endeavored to explain that he did not wish to resign, and Colonial terminated the plaintiff's employment. *Id.* ¶¶ 29–30.

As a result, the plaintiff filed this action against Colonial on February 27, 2025, bringing a one-count claim of age discrimination in violation of the ADEA, 29 U.S.C. § 621. ECF No. 1 ¶¶ 20–25. The plaintiff subsequently amended his complaint to add three unpaid wages claims: one claim for unpaid overtime under the FLSA, 29 U.S.C.

§ 201, *et seq.*; one claim for unpaid overtime in violation of the Virginia Overtime Wage Act (VOWA), Va. Code. § 40.1-29.1; and one claim for unauthorized deductions and misrepresentations of earnings in violation of the Virginia Wage Payment Act, Va. Code § 40.1-29. ECF No. 17 ¶¶ 37–54. The plaintiff requested lost and unpaid wages, liquidated and treble damages, statutory penalties, and attorney fees. *Id.* ¶¶ 36, 44, 49, 54.

On October 21, 2025, the parties engaged in a formal settlement conference and reached a settlement agreement. ECF No. 29 at 2–3. Thereafter, the parties submitted a joint motion for settlement approval. ECF Nos. 28 (motion), 29 (memorandum). Colonial agreed to provide the plaintiff with a $32,000 payment representing equal portions of unpaid/lost wages and damages, and a payment of $18,000 for attorney fees, for a total payment of $50,000. ECF No. 29-1 at 2–3.

## II. LEGAL STANDARDS

### A. FLSA Settlement Approval[2]

When parties seek to settle FLSA claims for unpaid wages, the district court must review the proposed settlement and determine if it is a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Gholston v. Smithfield Foods, Inc.*, No. 2:21-cv-194, 2022 WL 21842305, at *2 (E.D. Va. Nov. 2, 2022); *Minsterman v. S.L. Nusbaum Realty Co.*, No. 2:10-cv-

---

[2] Although FLSA settlements are subject to district court approval, ADEA settlements are not. Therefore, the Court's settlement approval analysis is limited to the plaintiff's FLSA claims.

303, 2011 WL 9687817, at *1 (E.D. Va. Jan. 21, 2011). "In deciding whether a bona fide dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case." *Duprey v. Scotts Co.*, 30 F. Supp. 3d 404, 408 (D. Md. 2014) (citing *Lomascolo v. Parsons Brickerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *16–17 (E.D. Va. Sept. 28, 2009)) (emphasis removed).

"There is a strong presumption in favor of finding a settlement fair." *Lomascolo*, 2009 WL 3094955, at *10 (quotation marks and citation omitted). When determining whether a FLSA settlement is fair and reasonable, district courts generally consider: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff; (5) the probability of the plaintiff's success on the merits; and (6) the amount of the settlement in relation to the potential recovery.[3] *Id.* (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173–74 (4th Cir. 1975) and *In re A.H. Robins Co., Inc.*, 88 B.R. 755, 759 (E.D. Va. 1988)); *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016); *Patel v. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014).

---

[3] *Lomascolo* also contemplates consideration of "the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object." 2009 WL 3094955, at *10. This case is not a class action, so this factor does not apply here.

**B.     Attorney Fees**

Under the FLSA, a district court may award the plaintiff "a reasonable attorney[] fee." 29 U.S.C. § 216(b). "[T]he fee applicant bears the burden of . . . documenting the appropriate hours expended and hourly rates. The applicant . . . should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The Fourth Circuit has outlined a three-step approach for courts to take when determining the appropriate award for attorney fees. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). First, the court should "determine the lodestar figure by multiplying the number of reasonable hours" by "a reasonable" hourly fee. *Id.* (citing *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). To determine whether any portion of a fee is reasonable, the following twelve factors should be considered:

    (1)     the time and labor expended;

    (2)     the novelty and difficulty of the questions raised;

    (3)     the skill required to properly perform the legal services rendered;

    (4)     the attorney's opportunity costs in pressing the instant litigation;

    (5)     the customary fee for like work;

    (6)     the attorney's expectations at the outset of the litigation;

    (7)     the time limitations imposed by the client or circumstances;

  (8)  the amount in controversy and the results obtained;

  (9)  the experience, reputation and ability of the attorney;

  (10) the undesirability of the case within the legal community in which the suit arose;

  (11) the nature and length of the professional relationship between attorney and client; and

  (12) attorney fees awards in similar cases.

*In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010) ("*Johnson* factors").

Second, the court "must subtract fees for hours spent on unsuccessful claims unrelated to the successful ones." *McAfee*, 738 F.3d at 88 (citing *Robinson*, 560 F.3d at 243) (quotation marks omitted).

And third, the "court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88. When "a plaintiff has achieved only partial or limited success," the lodestar "may be an excessive amount," even "where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 436. The district court can "attempt to identify specific hours that should be eliminated, or it may simply reduce the [plaintiff's] award to account for the limited success." *Id.* at 436–37. The court has "discretion in making this equitable judgment." *Id.* at 437.

### III. ANALYSIS

#### A. Bona Fide Dispute

The Court must first determine if the settlement resolves a bona fide dispute over alleged violation of FLSA provisions. *Minsterman*, 2011 WL 9687817, at *1

6

(quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). Such a dispute exists when an employee claims they are entitled to unpaid wages under the FLSA.

In this case, the parties disputed whether the plaintiff is entitled to unpaid overtime compensation and liquidated damages under the FLSA. ECF No. 17 ¶¶ 38–44 (alleging that the defendant violated 29 U.S.C. § 207 by failing to pay the plaintiff overtime wages); ECF No. 18 at 6 (arguing that the plaintiff is not entitled to damages because he was properly exempted from overtime under the FLSA). Title 29, United States Code, Section 216 governs the penalties for violating the FLSA, including the payment of unpaid overtime compensation and liquidated damages in equal amounts. The parties' settlement agreement provides payment to the plaintiff for both his unpaid wages and liquidated damages claims in equal amounts. ECF No. 29-1 at 2–3. Therefore, this settlement resolves a bona fide dispute over FLSA provisions.

B. **Reasonableness and Fairness**

i. *The extent of discovery*

To determine whether the settlement agreement constitutes a reasonable and fair resolution of the dispute, the Court first considers whether the parties had adequate time to conduct sufficient discovery. A scheduling order was entered in this case on July 8, 2025, which provided for a fact discovery deadline of October 14, 2025, and a December 9, 2025 deadline for the closure of all discovery. ECF No. 12 at 2. Prior to negotiating a settlement, formal written discovery was exchanged, and approximately one-and-a-half months remained in the discovery period. ECF No. 29 at 5; *see* ECF No. 12. Crediting the parties' representation that discovery provided

them an adequate opportunity to "fairly evaluate the liability and financial aspects of [the] case," *Lomascolo*, 2009 WL 3094955, at *11, the Court finds that the parties had adequate time to conduct sufficient discovery, and this factor weighs in favor of approving the settlement.

### ii. *The stage of proceedings*

Next, the Court looks to the stage of the proceedings, including the complexity, expense, and likely duration of the litigation. The objective of this factor is to ensure that "proceedings advanced to a stage sufficient to permit the [p]arties and their counsel to obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to [] trial." *Lomascolo*, 2009 WL 3094955, at *11. That objective is met here.

When the parties reached a settlement agreement, this case had been pending for nearly eight months, and trial was less than five months away. The parties represent that written discovery permitted them to "assess the[] respective strengths and weaknesses of their case and conclude that settlement is in [their mutual] best interest." ECF No. 29 at 5–6. The parties had also fully briefed several motions, including a pending motion to dismiss. ECF Nos. 19 (motion), 20 (memorandum), 21 (opposition), 22 (reply). And without settlement, the parties faced proceeding to "an expensive, lengthy trial, with risks to both sides, as well as likely appeals and post-trial motions." ECF No. 29 at 6. Accordingly, the stage of proceedings weighs in favor of finding that the proposed settlement agreement is fair and reasonable.

### *iii.   Absence of fraud or collusion*

Third, the Court considers the absence of fraud or collusion in the settlement. The parties represent that there is "absolutely no suggestion of fraud or collusion, and the settlement negotiations were conducted at arm's-length [sic] under the supervision of the United States Magistrate Judge." ECF No. 29 at 6. There is no evidence in the record that the settlement agreement is the product of fraud. *Lomascolo*, 2009 WL 3094955, at *12 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.") (citation omitted). Accordingly, the Court finds that the absence of fraud or collusion also weighs in favor of settlement approval.

### *iv.   Experience of plaintiff's counsel*

Fourth, the Court reviews the experience of plaintiff's counsel. Attorney Todd Gaynor serves as counsel in the instant matter. Gaynor has been practicing law in the Commonwealth of Virginia since 2002. ECF No. 29-2 ¶¶ 2, 4. His practice focuses on employment law, and he has served as counsel in several other FLSA matters. *Id.* ¶ 4. Upon review of his credentials, the Court finds that plaintiff's counsel possesses the breadth of relevant experience and knowledge needed to litigate and resolve this matter in the best interests of the plaintiff. Therefore, this factor weighs in favor of approving the proposed settlement.

### *v.   The probability of the plaintiff's success*

Fifth, the Court analyzes the probability of the plaintiff's success on the merits and whether the settlement agreement is inadequate "in light of the strength" of the

plaintiff's claims. *Flinn*, 528 F.2d at 1172. When the plaintiff's success appears uncertain, or minimal, this factor weighs in favor of approving the proposed settlement. *See LaFleur*, 189 F. Supp. 3d at 595. Here, the plaintiff's success was uncertain. Colonial asserted, with respect to the plaintiff's FLSA claims, four affirmative defenses. ECF No. 18 at 6–7. For example, the defendant argued that the plaintiff was properly qualified as exempt from overtime under the FLSA, and that the plaintiff's claim regarding improper deductions from pay was "wholly without merit." *Id.* And the plaintiff acknowledged that proceeding to trial was risky. *See* ECF No. 29 at 6. Thus, this factor weighs in favor of approving the proposed settlement.

### vi. *The amount of the settlement in relation to potential recovery*

Finally, the Court considers the amount of the settlement in relation to the potential recovery. The FLSA allows recovery in the amount of unpaid minimum wages and/or overtime compensation, and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). The statute of limitations for commencement of such claims is either two or three years after accrual of the cause of answer, depending upon whether the violation was willful. 29 U.S.C. § 255.

The settlement agreement provides that the plaintiff will receive $32,000 for his FLSA claims—reflecting $16,000 in wages and $16,000 in damages. ECF No. 29-1 at 2–3. Although the plaintiff does not estimate his potential FLSA recovery, the parties represent that the settlement amount is the product of compromise "on both the amount of unpaid hours and the period of time for which such compensation will be provided." ECF No. 29 at 7. Given this representation, the Court finds that the

10

settlement amount reflects a reasonable compromise. Therefore, this factor weighs in favor of approving the proposed settlement.

Because all six factors weigh in favor of approving the settlement agreement, the Court approves the payment of $32,000 to the plaintiff.

### B. Attorney Fees

The proposed settlement also provides for the payment of attorney fees in the amount of $18,000. ECF No. 29 at 3. The Court applies the three-step approach outlined by the Fourth Circuit to determine whether the attorney fees that Colonial has agreed to pay to plaintiff's counsel are reasonable. *See McAfee*, 738 F.3d at 88. The Court is satisfied that they are.

The Court must first determine the lodestar amount, which is the reasonable amount of hours multiplied by a reasonable attorney fee. *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998). When assessing the reasonableness of fees, the twelve *Johnson* factors guide the Court's reasonableness assessment, though it "need not consider all twelve *Johnson* factors, only those relevant to the particular litigation." *Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 364 (E.D. Va. Dec. 8, 2021) (citations omitted).

Counsel represents that he spent 57.4 attorney hours on this matter. ECF No. 29-2 at 4 ¶ 17; ECF No. 29-3 at 4. Counsel charged $465 per hour, which yields attorney's fees of $26,691. ECF No. 29-2 at 4 ¶ 17, ECF No. 29-3 at 4.

Courts in this district have approved higher rates for experienced counsel in similar matters. *Gholston*, 2022 WL 21842305, at \*6 (finding an hourly rate of $500

11

"reasonable . . . especially" when counsel was "experienced in FLSA" actions) (citing *LaFleur*, 189 F. Supp. 3d at 597–98 (approving reduced hourly rates that ranged from $75 to $475)); *Carr v. Rest Inn, Inc.*, No. 2:14-cv-609, 2015 WL 5177600, at *4 (E.D. Va. Sept. 3, 2015) (finding that $500 per hour was a "reasonable" rate for an experienced FLSA attorney). Here, counsel represents that he is an experienced FLSA attorney. ECF No. 29 at 6, 10 ¶ 9; ECF No. 29-2 at 2–3 ¶ 4. The skill and reputation of counsel and the contingent basis of the fee likewise support the reasonableness of counsel's hourly rate. *In re Abrams & Abrams, P.A.*, 605 F.3d at 246. Therefore, the Court finds that counsel's hourly rate of $475 is reasonable.

The Court also finds that counsel billed a reasonable amount of time in this case in light of the relevant *Johnson* factors, including the time and labor expended, the novelty and difficulty of the questions raised, the skill required to perform the legal services, the experience and reputation of counsel, and the results obtained. *In re Abrams & Abrams, P.A.*, 605 F.3d at 246.

Attorney Gaynor billed 57.4 hours for his work in this matter over the course of approximately 21 months, proceeding nearly to the close of discovery. ECF No. 29-3 at 4; *see* ECF No. 12 at 2. As outlined in the itemized billing report and declaration provided by counsel, counsel's work on this case includes legal research, drafting and filing the complaint and various motions, written discovery, preparing for depositions, interviewing witnesses, client communications, and settlement negotiations. ECF No. 29-2 at 3 ¶ 11; ECF No. 29-3. Counsel represents that this case required him to analyze rarely litigated FLSA issues requiring the skill of an attorney

12

experienced with litigating employment matters in federal court. ECF No. 29 at 8 ¶ 2, 8–9 ¶ 3; ECF No. 29-2 at 4 ¶ 12. And counsel achieved a positive outcome for the plaintiff, who will receive $32,000 as part of this settlement.

Upon due consideration of the record, agreement of the parties, and the relevant *Johnson* factors, the Court finds that a lodestar amount of $18,000 is reasonable. The Court also notes that the agreed-upon $18,000 in attorney fees and costs represents a 32.60% reduction in the total amount of fees billed by counsel, which also lends to its reasonableness. ECF No. 29-2 at 4 ¶ 17. Because the proposed settlement pertains to both the plaintiff's ADEA and FLSA claims—and, therefore, none of the plaintiff's claims were unsuccessful—the Court will not exclude hours for unsuccessful claims. *Hensley*, 461 U.S. at 440.

Finally, the Court considers the plaintiff's degree of success, which is the "most critical factor" in the reasonableness analysis. *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006) (quotation marks and citation omitted). There is no "precise . . . formula" for this analysis, *Hensley*, 461 U.S. at 436; rather, courts consider the "overall degree of success in light of the litigation as a whole." *Randolph v. PowerComm Constr., Inc.*, 780 F. App'x 16, 23 (4th Cir. 2019) (unpublished) (emphasis removed).

Counsel represents that the plaintiff will receive a "significant recovery" as a result of the settlement. ECF No. 29 at 9 ¶ 8. Because the record does not indicate the damages sought, the Court is unable to measure the degree of the plaintiff's success by comparing the amount of damages sought to the amount obtained through the settlement. *See Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005). However,

13

the Court observes that the agreed-upon attorney fees are proportionate to the degree of success counsel achieved for the plaintiff, under the terms of the engagement agreement. *See* ECF No. 29-2 ¶ 14. The plaintiff agreed to pay a contingency fee of 40% of any gross settlement obtained after the filing of the lawsuit, and the reduced, agreed-upon fee of $18,000 constitutes 36% of the total settlement amount of $50,000. Accordingly, no reduction for degree of success is appropriate in this case, and the Court will approve the payment of attorney fees in the amount of $18,000.

### IV. CONCLUSION

For the reasons stated herein, the Joint Motion for Final Approval of Settlement (ECF No. 28) is **GRANTED**. Plaintiff Paul Vickery's award of $32,000, reflecting wages and damages, and counsel's award of $18,000, reflecting attorney fees, are **APPROVED**.

The case is hereby **CLOSED**, except that the Court **RETAINS** jurisdiction to enforce the settlement agreement.

**IT IS SO ORDERED**.

/s/
Jamar K. Walker
United States District Judge

Norfolk, Virginia
January 23, 2026